**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JERMAINE FANN,

                    Plaintiff,

          v.                                              No. 9:15-CV-1339
                                                          (DNH/CFH)
H. GRAHAM, Superintendent Auburn
Correctional Facility, et al.,

                              Defendants.

_____


**APPEARANCES:**                        **OF COUNSEL:**

Jermaine Fann
430 Main Street
Apt. 306
Dunkirk, New York 14048
Plaintiff pro se

Hon. Eric T. Schneiderman               WILLIAM A. SCOTT, ESQ.
Attorney General for the                NICOLE E. HAIMSON, ESQ.
     State of New York                  Assistant Attorneys General
The Capitol
Albany, New York 12224
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

          Plaintiff pro se Jermaine Fann ("plaintiff"), a former inmate who was, at all relevant

times, in the custody of the New York State Department of Corrections and Community

_____

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to
28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Superintendent ("Supt.") H. Graham, Deputy Superintendent ("DSS") Fagan, Lieutenant ("Lieut.") Ouimetto, Sergeant ("Sgt.") Ederer, Corrections Officer ("C.O.") M. Cornell, C.O. Lovejoy, C.O. Steinberg, C.O. C. Thomas, and C.O. R.F. Schramm – who, at all relevant times, were employed at the Auburn Correctional Facility ("Auburn") – violated his constitutional rights under the First, Fourth, and Fourteenth Amendments.  Dkt. No. 79. ("Am. Compl.").  Presently pending before the Court are plaintiff's Motion for Summary Judgment and defendants' Motion for Summary Judgment, both filed pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56.  Dkt Nos. 119, 120.  Plaintiff and defendant opposed the respective motions, and defendant filed a reply.  Dkt. Nos. 124, 125, 126.  For the following reasons, it is recommended that defendants' motion be granted in part and denied in part, and plaintiff's motion be denied.

## I. Arguments

### A. Plaintiff's Motion for Summary Judgment

In support of his Motion for Summary Judgment, plaintiff filed a Statement of Material Facts.[2]  On review of plaintiff's Motion for Summary Judgment, the facts will be

---

[2]  Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings,

related herein in the light most favorable to defendants as the nonmoving party.  See subsection II (A) infra; Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").  On May 10, 2015, plaintiff filed a grievance against C.O. Thomas for denying him the right to attend morning breakfast.  Dkt. No. 119-2 ¶¶ 7-8.  On June 6, 2015, C.O. Thomas approached plaintiff regarding the May 10, 2015 grievance.  Id. ¶ 10.  The next day, C.O. Thomas informed plaintiff that he was confined to his cell because of the grievance plaintiff filed against him.  Id. ¶ 11.  C.O. Thomas then issued plaintiff a false misbehavior report because of plaintiff's May 10, 2015 grievance against him.  Id. ¶ 12.  On June 12, 2015, plaintiff received thirty days confinement and loss of all privileges pursuant to C.O. Thomas' June 7, 2015 misbehavior report.  Id. ¶ 13.

On June 3, 2015, C.O. Cornell and C.O. Steinberg performed an "unreasonable" visual body cavity search – also known as a "strip frisk" or "strip search" – on plaintiff "under filthy prison conditions."  Dkt. No. 119-2 ¶¶ 14-15, 17.  The strip frisk room "was

---

depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R.  7.1(a)(3).

filthy, bug infested, and extremely cold." Id. ¶ 16.  Supt. Graham, who has worked at Auburn for ten-and-a-half years, knew Auburn corrections officers were conducting unreasonable searches. Id. ¶ 18-19.  The same day, plaintiff filed a grievance against C.O. Cornell and C.O. Steinberg alleging an unreasonable strip frisk. Id. ¶ 20.  On June 13, 2015, C.O. Cornell "responded to the plaintiff's [ ] grievance." Id. ¶ 21.  On July 8, 2015, C.O. Cornell confronted plaintiff regarding the June 3, 2015 grievance plaintiff filed against him. Id. ¶ 22.  On July 9, 2015, Sgt. Ederer authorized C.O. Cornell to perform a visual body cavity search on plaintiff. Id. ¶¶ 29, 32.  During the strip frisk, C.O. Cornell "made statements" to plaintiff regarding the June 3, 2015 grievance that plaintiff filed against him. Id. ¶ 28.  C.O. Cornell was not supervised during the strip frisk, nor did he conduct the search in a "suitable and comfortable location." Id. ¶¶ 30, 31.

The same day, C.O. Cornell and C.O. Lovejoy conducted a cell search of plaintiff's cell.  Dkt. No. 119-2 ¶ 33.  During the search, C.O. Cornell, C.O. Lovejoy, and C.O. Schramm destroyed plaintiff's legal materials and medication.  Id. ¶ 34.  C.O. Lovejoy escorted plaintiff to the hospital for a urine test. Id. ¶ 35.  C.O. Lovejoy and C.O. Schramm "harassed and threatened the plaintiff for his grievance activities." Id. ¶ 36.  C.O. Cornell "planted drugs on the plaintiff for filing [a] grievance." Id. ¶ 37.  On July 10, 2015, C.O. Cornell issued plaintiff a misbehavior report in retaliation for his June 3, 2015 grievance that plaintiff filed against him. Id. ¶¶ 38-39.  On July 28, 2015, "plaintiff was found guilty of the false misbehavior report written by [C.O.] Cornell." Id. ¶ 40.  On October 1, 2015, "Albany" reversed the July 28, 2015 disciplinary decision. Id. ¶ 41.

In opposition, defendants argue that the Court should deny plaintiff's motion

because plaintiff's motion papers "affirmatively demonstrate" that his claims are without merit, and, therefore, should be dismissed.  Dkt. No. 124-1 at 6.

### B. Defendants' Motion for Summary Judgment

In support of their Motion for Summary Judgment, defendants filed a Statement of Material Facts.  Dkt. No. 120-1.  The facts relating to defendants' Motion for Summary Judgment are related herein in the light most favorable to plaintiff as the nonmoving party. See subsection II (A), infra; Rattner, 930 F.2d at 209 ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").  On June 3, 2015, plaintiff alleges that C.O. Cornell and C.O. Steinberg strip frisked him.  Dkt. No. 120-1 ¶ 11.  C.O. Cornell conducted a pat frisk on that date, but did not perform a strip frisk.  Id. ¶ 12.  C.O. Steinberg did not perform a pat frisk or strip frisk on plaintiff on June 3, 2015.  Id. ¶ 13.

On June 7, 2015, C.O. Thomas issued plaintiff a Tier II disciplinary ticket for sleeping during morning count.  Dkt. No. 120-1 ¶ 18.  On June 12, 2015, Lieut. Ouimette commenced a Tier II disciplinary hearing.  Id. ¶ 19.  During the hearing, Lieut. Ouimette denied plaintiff's request to call Supt. Graham as a witness because he did not issue the disciplinary ticket, and was not present during the incident that resulted in the ticket.  Id. ¶¶ 20-21.  Although Lieut. Ouimette denied plaintiff's request, he allowed plaintiff to testify that he had filed a prior grievance against C.O. Thomas.  Id. ¶¶ 22, 23. Lieut. Ouimette

found plaintiff guilty, and sentenced him to thirty days keeplock.[3]

On July 9, 2015, Sgt. Ederer authorized C.O. Cornell and C.O. Lovejoy to conduct a cell search of plaintiff's cell. Dkt. No. 120-1 ¶ 27. In conjunction with the cell search, C.O. Cornell performed a pat frisk of plaintiff. Id. ¶ 28. During the pat frisk, C.O. Cornell found a "green leafy substance" on plaintiff that was later found to be marijuana, along with a "suspicious lump" in plaintiff's "groin area." Id. ¶ 29. C.O. Cornell requested permission to conduct a strip frisk. Id. ¶ 30. C.O. Cornell found no further contraband during the strip frisk. Id. ¶ 31. C.O. Cornell was the only officer present during plaintiff's strip frisk. Id. ¶ 32. C.O. Lovejoy completed the search of plaintiff's cell and found no other contraband. Id. ¶ 34. Because plaintiff possessed marijuana, Auburn staff took plaintiff to the hospital for urine sample testing. Id. ¶ 35. Plaintiff tested positive for marijuana use. Id. ¶ 36. C.O. Cornell issued plaintiff a misbehavior report for possession and use of marijuana. Id. ¶ 37.

On July 14, 2015, Lieut. Ouimette commenced a Tier III disciplinary hearing regarding the July 9, 2015 misbehavior report. Dkt. No. 120-1 ¶ 38. At the outset, Lieut. Ouimette dismissed the drug use charge because plaintiff had already tested positive for marijuana use within the past thirty days, and the July 9, 2015 test results could not be validated. Id. ¶¶ 39-40. Lieut. Ouimette found plaintiff guilty of drug possession, and sentenced him to ninety days keeplock. Id. ¶ 41. The disciplinary disposition was reversed on appeal, and plaintiff served approximately sixty days in keeplock. Id. ¶ 42.

---

[3] "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. COMP. CODES R. & REGS. tit. 7, § 301.6.

In opposition, plaintiff argues that the Court should deny defendants' motion because: (1) he exhausted his administrative remedies; and (2) he has stated claims against the defendants. Dkt. No. 125. In reply, defendants contend that plaintiff failed to exhaust his administrative remedies. Dkt. No. 126.

## II. Discussion[4]

### A. Legal Standards

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show

---

[4] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. Id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

8

## B. Exhaustion

As a threshold matter, defendants contend that plaintiff has failed to exhaust his administrative remedies. Dkt. No. 120-4 ("Def. Mem. of Law") at 10-13. Defendants argue that because plaintiff failed to exhaust his administrative remedies as to Supt. Graham, DSS Fagan, Sgt. Ederer, C.O. Lovejoy, and C.O. Schramm, any claims involving those defendants should be dismissed. Def. Mem. of Law at 13. Defendants further argue that plaintiff failed to exhaust his administrative remedies as to the July 9, 2015 incident. Id.[5] Plaintiff contends that he properly filed a grievance regarding the July 9, 2015 incident. Dkt. No. 125 at 7-8. Plaintiff also claims that he was aware "of the facility attitude toward the grievance program" and "properly followed all steps to exhaust his claims." Id. at 8. Plaintiff argues that "the [d]efendants failure to properly deliver and or have a program where grievances are safe and secure does not fall at [his] feet, [and] should not be an escape route for claims to be dismissed." Id. In reply, defendants argue that plaintiff supports his "conclusory allegation" that he exhausted his administrative remedies with "handwritten letters that, by [p]laintiff's own acknowledgement [sic], were never acknowledged as received by DOCCS." Dkt. No. 126 at 4. Defendants contend that plaintiff's prior grievance filings and Jeffery Hale and Cheryl Parmiter's declarations invalidate plaintiff's claim of unavailability. Id.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising

---

[5] Defendants concede that plaintiff exhausted his administrative remedies regarding C.O. Cornell and C.O. Steinberg's June 3, 2015 strip frisk, and C.O. Thomas' June 7, 2015 misbehavior report. Def. Mem. of Law at 13.

out of his or her incarceration.  See Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006).  The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter, 534 U.S. at 532).  Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages.  Id. at 524.  To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated.  Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply."  Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted).  The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement."  Ross v. Blake, __ U.S. __,136 S. Ct. 1850, 1862 (2016).  Thus, the "special circumstances" exception in Hemphill v. New York, 680 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA.  Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).[6]

Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion."  Ross, 136 S. Ct. at

---

[6] In Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception.  See Williams, 829 F.3d at 123.  The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate."  Id. (citing Ross, 136 S. Ct. at 1858-59).

1858.  Under this exception, courts must determine whether administrative remedies were "available" to a prisoner.  Id.  The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  Id.  Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Id. at 1860.

### 1. Did Plaintiff Exhaust his Administrative Remedies?

Although plaintiff seems to suggest that the Auburn grievance process was unavailable, there is no genuine dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program.  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5.[7]

---

[7] First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident.  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1).  An IGP representative has sixteen calendar days to informally resolve the issue.  Id. § 701.5(b)(1).  If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing.  Id. §§ 701.5(b)(2)(i)-(ii).  If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination.  Id. § 701.5(c)(1).  If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination.  Id. §§ 701.5(d)(i)-(ii).  CORC must review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received."  Id. § 701.5(d)(3)(ii).

### a. DSS Fagan

Plaintiff concedes that he did not exhaust his administrative remedies as to claims against DSS Fagan, and that summary judgment should be granted.  Dkt. No. 125 at 9.  Accordingly, it is recommended that defendants' Motion for Summary Judgment, insofar as it relates to claims against DSS Fagan, be granted.

### b. Supt. Graham and Lieut. Ouimetto

Insofar as plaintiff seeks relief against Supt. Graham for supervisory liability and Lieut. Ouimetto for Fourteenth Amendment due process, plaintiff has failed to exhaust his administrative remedies.  DOCCS records establish that plaintiff did not name either Supt. Graham or Lieut. Ouimetto in grievances pertaining to the conduct at issue.  See Dkt. No. 120-30; Dkt. No. 120-29 ("Hale Decl.") at 4 (detailing plaintiff's subject grievances).  Notably, in opposition, plaintiff does not allege that he exhausted his administrative remedies as to Supt. Graham or Lieut. Ouimetto, and does not claim that defendants prevented or obstructed him from filing grievances against Supt. Graham or Lieut. Ouimetto.  Further, there is nothing in the record indicating that Supt. Graham, Lieut. Ouimetto, or any other defendant prevented him from filing grievances.  See Dkt. No. 125 at 8 (noting, in plaintiff's exhaustion section, that he "properly exhausted" claims against defendants Cornell, Lovejoy, Ederer, and Schramm).[8]  Therefore, because plaintiff failed to exhaust his administrative remedies as to Supt. Graham and Lieut. Ouimetto, it is

---

[8] Plaintiff testified that he filed a grievance against Supt. Graham for failure to release him from keeplock, such conduct – by plaintiff's own admission – is not related to the instant case.  Dkt. No. 120-3 ("Pl. Dep.") at 125, 222; Dkt. No. 120-34.

recommended that defendants' Motion for Summary Judgment, insofar as it relates to claims against Supt. Graham and Lieut. Ouimetto, be granted.

### c. July 9, 2015 Incident

Plaintiff claims that on July 14, 2015, he filed a grievance regarding the July 9, 2015 "retaliatory cell search, visual body cavity search, urine test, verbal threats, harassment, and the false misbehavior report." Am. Compl. ¶ 169.  Plaintiff testified that he handed this grievance to the "rounds officer" while he was on keeplock confinement.  Dkt. No.120-3 ("Pl. Dep.") at 213.  On July 17, 2015, after he did not receive a copy of the grievance or a grievance number, plaintiff filed a second grievance.  Am. Compl. ¶ 171.  Plaintiff testified that he handed the second grievance to the sergeant on duty.  Pl. Dep. at 217.  On August 13, 2015, after not receiving a response from Auburn's IGRC, plaintiff filed a notice of appeal "in accordance with the rules and regulations" requesting that his grievance be sent to CORC.  Am. Compl. ¶ 177.

Defendants contend that plaintiff never filed a grievance with respect to the July 9, 2015 strip frisk by C.O. Cornell, cell search by C.O. Cornell, C.O. Lovejoy, C.O. Schramm, and Sgt. Ederer, destruction of property by C.O. Cornell and C.O. Schramm, and a falsified misbehavior report.  Def. Mem. of Law at 12-13.  Auburn's IGP Supervisor Cheryl Parmiter declared that a search of the DOCCS database confirms that, although plaintiff filed six grievances while housed at Auburn, five were filed prior to July 9, 2015.  Dkt. No. 120-35 ("Parmiter Decl.") at 3.  The grievance filed after July 9, 2015 does not relate to the wrongdoings plaintiff alleged occurred on July 9, 2015.  Id. at 4.  DOCCS' Assistant

Director of IGP Jeffery Hale declared that a search of the CORC database confirms that "plaintiff filed a number of grievance appeals with CORC, but none of those appeals concern matters stemming from incidents of an allegedly improper strip frisk, an allegedly improper cell search, or the issuance of an allegedly false misbehavior report on July 9, 2015." Hale Decl. at 4. However, plaintiff has proffered a copy of the July 17, 2015 grievance alleging that "several officers"[9] subjected him "to an unnecessary pat frisk, strip, frisk, cell search, verbal threats, and an [sic] urine test and false report." Dkt. No. 125-2 at 18. Plaintiff further provides his August 13, 2015 notice of appeal to CORC, which details plaintiff's attempts to exhaust his administrative remedies and expresses his desire to further "appeal to the next level of review." Id.[10]

Viewing the facts in the light most favorable to plaintiff, the record suggests that plaintiff's grievances were submitted, but were unfiled and unanswered, creating an issue of fact as to whether the grievance process was available and whether plaintiff attempted to exhaust his administrative remedies as to C.O. Cornell, C.O. Lovejoy, C.O. Schramm, and Sgt. Ederer in relation to the July 9, 2015 incident. See Williams, 829 F.3d at 126 (concluding that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it."); Thaxton v.

---

[9] In New York State, the IGP regulations do not require that an inmate's grievance contain the name of the offending corrections officer. See Espinal v. Goord, 558 F.3d 119, 126 (2d Cir. 2009). "[T]he IGP regulations offer the general guidance that a grievance should 'contain a concise, specific description of the problem,' . . . and the complaint form does not instruct the inmate to name the officials allegedly responsible for misconduct." Id. (internal citations omitted). Therefore, an inmate "is not required to name responsible parties in a grievance in order to exhaust his administrative remedies." Id.

[10] Plaintiff's July 2015 grievance involves staff misconduct or harassment, which follows an expedited procedure and is immediately sent to the superintendent for review. See N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8(a), (b); Dkt. No. 125-2 at 18.

14

Simmons, No. 9:10-CV-1318 (MAD/RFT), 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as to whether [p]laintiff never filed his initial grievance on April 29, as [d]efendants claim, or that, as [p]laintiff claims, he filed a timely grievance that was lost or tampered with by [d]efendants. Such credibility assessments are to be resolved by a trier of fact."). Accordingly, the undersigned recommends that defendants' Motion for Summary Judgment on plaintiff's claims arising from the July 9, 2015 incident be denied, without prejudice and with the opportunity to renew by way of an exhaustion hearing, should defendants request such a hearing.

### C. Fourth Amendment

Plaintiff alleges that C.O. Cornell and C.O. Steinberg violated his Fourth Amendment rights during a June 3, 2015 strip search. Dkt. No. 119-3 ("Pl. Mem. of Law") at 4-5. Defendants argue that the strip frisk never occurred, and in the alternative, neither C.O. Cornell nor C.O. Steinberg had physical contact with plaintiff. Def. Mem. of Law at 19. The Fourth Amendment establishes that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures[ ] shall not be violated." U.S. CONST. amend. IV. However, inmates are generally not afforded the same privacy rights as non-inmates because "[l]oss of . . . privacy [is an] inherent incident[ ] of confinement." Bell v. Wolfish, 441 U.S. 520, 536 (1979); Perez v. N.Y.S. Dep't of Corr. Servs., No. 9:08-CV-1031, 2010 WL 1235637, at *5 (N.D.N.Y. Mar. 17, 2010). "Strip frisks pass constitutional muster, even if the strip frisk is conducted without probable cause, so long as the search is reasonable and not abusive." Shabazz v. Pico, 994 F. Supp. 460, 473

15

(S.D.N.Y. 1998) (citing Bell, 411 U.S. at 558-60)).  In assessing reasonableness under the Fourth Amendment, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell, 441 U.S. at 558.  C.O. Cornell concedes that he pat frisked plaintiff on June 3, 2015, but denies conducting a strip frisk.  Def. Mem. of Law at 19; Dkt. No. 120-18 ("Cornell Decl.") ¶ 4.  C.O. Steinberg denies strip frisking plaintiff on June 3, 2015.  Def. Mem. of Law at 19; Dkt. No. 120-21 ("Steinberg Decl.") ¶ 4.  C.O. Steinberg further states that he did not witness C.O. Cornell pat frisk plaintiff on June 3, 2015.  Steinberg Decl. ¶ 4.

The record contains disputed issues of material fact as to whether the June 3, 2015 strip frisk occurred, and if it did occur, whether the strip frisk was reasonable under the Fourth Amendment.  However, even assuming the strip frisk occurred as plaintiff alleges, and occurred without probable cause, plaintiff fails to establish that the June 3, 2015 strip frisk was unreasonable.  Plaintiff testified that the June 3, 2015 search was illegal, in part, because C.O. Cornell conducted it in a "racist manner" by forcing plaintiff to "have [his] hands above [his] head, strapped to some bars, standing naked."  Pl. Dep. at 222-23. DOCCS Directive 4190 states that a corrections officer may require an inmate to "lift[ ] his arms to expose his armpits" during a strip frisk.  Dkt. No. 120-8 at 6.  Plaintiff has not further demonstrated how standing with his "hands above [his] head, strapped to some bars" constitutes racist conduct on behalf of C.O. Cornell or C.O. Steinberg.  Pl. Dep. at 222-23.  Moreover, there is no indication that C.O. Cornell or C.O. Steinberg exceeded the scope of the strip frisk, as plaintiff concedes that neither C.O. Cornell or C.O. Steinberg

16

made physical contact with him during the frisk.  Pl. Dep. at 152.  Insofar as plaintiff suggests that C.O. Cornell and C.O. Steinberg violated DOCCS Directive 4190 by conducting the strip search in the alleged unsanitary area at issue in C-Block, C.O. Cornell and C.O. Steinberg's failure to follow a DOCCS directive does not amount to a constitutional violation.  See Burroughs v. Petrone, 138 F. Supp. 3d 182, 219 (N.D.N.Y. 2015); Sanders v. Gifford, No. 11-CV-0326, 2014 WL 5662775, at *4 (N.D.N.Y. Nov. 4, 2014).  Therefore, viewing the facts in the light most favorable to plaintiff, plaintiff fails to establish that the June 3, 2015 strip frisk was unreasonable.  Accordingly, it is recommended that plaintiff's Motion for Summary Judgment as to the June 3, 2015 strip search be denied, and defendants' Motion for Summary Judgment be granted.


### D. First Amendment

Plaintiff claims that C.O. Thomas subjected him to a false misbehavior report in retaliation for filing a grievance against him.  Pl.'s Mem. of Law at 6-7.  Defendants argue that plaintiff "has no viable claim for Officer Thomas' filing of a false misbehavior report [because] [h]e was granted a hearing on the charges and does not raise any viable claim that such hearing failed to provide him due process."  Def.'s Mem. of Law at 20.  Moreover, defendants argue that the only evidence plaintiff offers of C.O. Thomas' retaliation are the inadmissible declarations of inmates who purported to have overheard conversations between C.O. Thomas and plaintiff.  Dkt. No. 124-1 at 8-9.

Courts are to "approach [First Amendment] retaliation claims by prisoners 'with skepticism and particular care[.]'"  See, e.g., Davis v. Goord, 320 F.3d 346, 352 (2d Cir.

2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema, N. A., 534 U.S. 506 (2002)).  A retaliation claim under Section 1983 may not be conclusory and must have some basis in specific facts that are not inherently implausible on their face.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); South Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 110 (2d Cir. 2009).  "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (quoting Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004), overruled on other grounds by Swierkiewicz, 534 U.S. at 560).

       To satisfy the first element of a retaliation claim, a plaintiff must show that he engaged in a protected activity.  See Espinal, 558 F.3d at 128.  The Second Circuit has concluded that use of the prison grievance system constitutes a protected activity.  See Gill, 389 F.3d at 384; Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988) ("Moreover, intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that section 1983 is intended to remedy.") (alteration and internal quotation marks omitted); see also Roseboro v. Gillespie, 791 F. Supp. 2d 353, 367 (S.D.N.Y. 2011) (finding that the filing of a grievance is a protected activity); Mateo v. Fischer, 682 F. Supp. 2d 423, 433 (S.D.N.Y. 2010) (same).  Plaintiff states that he filed a grievance against C.O. Thomas on May 10, 2015.  Pl.'s Mem. of Law at 6-7; Dkt. No. 119-4 at 4.  Thus, plaintiff satisfies the first prong of the test as he has engaged in a protected

18

activity.  See id.; Gill, 389 F.3d at 384.

A defendant's retaliatory filing of a falsified misbehavior report that results in disciplinary segregated confinement constitutes adverse action.  See Gill, 389 F.3d at 384 (finding that a false misbehavior report that resulted in the plaintiff's placement in keeplock constituted adverse action); Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (emphasis added) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983.").  "[T]he mere allegation that a false misbehavior report has been issued to an inmate, standing alone, does not rise to [a] level of constitutional significance." Reed v. Doe No. 1, No. 9:11-CV-0250 (TJM/DEP), 2012 WL 4486086, at *5 (N.D.N.Y. July 26, 2012) (citing Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997)).  However, a plaintiff's allegation that a defendant issued a false misbehavior report in response to the plaintiff's protected activity can support a claim of unlawful retaliation.  Id. (citing Franco v. Kelly, 854 F.2d 584, 589 (2d. Cir 2008)).  The plaintiff bears the burden of establishing that "the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff."  Gayle, 313 F.3d at 682.

> In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation.

Baskerville v. Blot, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002).  "The causal connection must be sufficient to support an inference that the protected conduct played a substantial

19

part in the adverse action." Id. In assessing temporal proximity, the Second Circuit has held that, generally, to establish a temporal proximity sufficient to support an inference of causal connection, there may be no more than six months between the temporal proximity and the adverse action. See Espinal, 558 F.3d at 129.

Plaintiff alleges that on May 10, 2015, he filed a grievance against C.O. Thomas. Pl.'s Mem. of Law at 6-7; Dkt. No. 119-4 at 4. On June 6, 2015, C.O. Thomas submitted a memorandum to the Auburn IGP denying the allegations set forth in the grievance. Dkt. No. 119-4 at 6. The following day, C.O. Thomas confined plaintiff to his cell. Pl.'s Mem. of Law at 7. When plaintiff questioned why he was confined, C.O. Thomas stated, "you filed [a] grievance, this is what you had asked for." Id. C.O. Thomas issued plaintiff a misbehavior report for failure to comply with facility count procedures (112.21) and refusing a direct order (106.10) stemming from plaintiff's failure to wake up during morning count. Id.; Dkt. No. 119-4 at 15. Lieut. Ouimette conducted a disciplinary hearing on June 12, 2015 and sentenced plaintiff to thirty days keeplock. Id. at 17.

Defendants argue that plaintiff "provides no admissible evidence in support of this claim and Officer Thomas has specifically denied the allegations of retaliation." Dkt. No. 124-1 at 8. Defendants also discredit plaintiff's reliance on Kenneth Boyd's Declaration, which they contend is "insufficient and inadmissible as it is based upon his own supposition regarding Officer Thomas' mental state and his alleged conversations with the Plaintiff." Id. at 9. Although defendants are correct that "[a]ffidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, . . . [and] set forth facts as would be admissible in evidence,'" plaintiff's submission of the Boyd

20

Declaration is not fatal to his claim. <u>Patterson v. County of Oneida, N.Y.</u>, 375 F.3d 206, 219 (2d Cir. 2004) (quoting FED. R. CIV. P. 56(e)). Indeed, the record establishes that plaintiff has presented sufficient circumstantial and direct evidence to raise a material question of fact whether C.O. Thomas retaliated against him.

Plaintiff has suggested facts supporting two of the factors set forth in <u>Baskerville</u>. <u>Baskerville</u>, 224 F. Supp. 2d at 732. Plaintiff filed a grievance against C.O. Thomas on May 10, 2015. Pl.'s Mem. of Law at 6-7; Dkt. No. 119-4 at 4. On June 6, 2015, C.O. Thomas submitted a memorandum to the Auburn IGP in conjunction with the grievance investigation denying the allegations against him. Dkt. No. 119-4 at 6. The next day, C.O. Thomas filed an allegedly false misbehavior report. Pl.'s Mem. of Law at 7; Dkt. No. 119-4 at 15. C.O. Thomas learned of plaintiff's grievance, at the latest, on June 6, 2015, and issued the misbehavior report on June 7, 2015; therefore, the temporal proximity sufficiently supports an inference of causal connection. See <u>Washington v. Afify</u>, 681 F. App'x 43, 46 (2d Cir. 2017) (summary order) (finding that the defendant's questioning of the plaintiff about a grievance he filed, and subsequently filing an allegedly false misbehavior report against the plaintiff two days later supports an inference of causal connection). Moreover, upon confining plaintiff in his cell, C.O. Thomas stated, "you filed [a] grievance, this is what you had asked for." Pl.'s Mem. of Law at 7. In support of that contention, plaintiff has proffered the sworn affidavit of inmate Rodolfo Casiano, who testified that he was housed in a neighboring cell and witnessed the conversation between plaintiff and "the officer that worked that day." Dkt. No. 119-4 at 8. Mr. Casiano states that he heard C.O. Thomas make the abovementioned comment, as well as the statement, "it's

funny how things work." Id.  Although C.O. Thomas denies issuing the misbehavior report in retaliation for plaintiff's grievance, affording plaintiff special solicitude, a question of material fact is raised as to whether C.O. Thomas had retaliatory intent. See Washington, 681 F. App'x at 46.  Defendants do not argue that plaintiff would have been issued a misbehavior report but for the exercise of his First Amendment rights. See Gayle, 313 F.3d a 682 ("The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation.").  Arguably, defendants may be suggesting that plaintiff received a misbehavior report because he slept through the morning facility count; however, as plaintiff denies this conduct, a material fact is in dispute.  See Dkt. No. 119-4 at 15.  Because a genuine issue of material fact exists with regard to C.O. Thomas' retaliatory intent, it is recommended that plaintiff's Motion for Summary Judgment be denied, and defendants' Motion for Summary Judgment be denied as to plaintiff's First Amendment claim against C.O. Thomas.

## III. Conclusion

WHEREFORE, for the reasons stated herein, it is hereby

RECOMMENDED, that plaintiff's Motion for Summary Judgment (Dkt. No. 119) be DENIED; and it is further

RECOMMENDED, that defendants' Motion for Summary Judgment (Dkt. No. 120) be GRANTED IN PART:

(1) Insofar as it seeks dismissal of plaintiff's supervisory liability claims against Deputy Superintendent Fagan;

22

(2) Insofar as it seeks dismissal of plaintiff's supervisory liability claim against Supt. Graham;

(3) Insofar as it seeks dismissal of plaintiff's Fourteenth Amendment due process claim against Lieut. Ouimette,

(4) Insofar as it seeks dismissal of plaintiff's Fourth Amendment unreasonable search claim against C.O. Cornell and C.O. Steinberg,

the motion be **GRANTED**, and the claims be **DISMISSED** with prejudice; and it is further

**RECOMMENDED**, that defendants' Motion for Summary Judgment (Dkt. No. 120) be **DENIED IN PART**:

(1) Insofar as it seeks dismissal of plaintiff's First Amendment retaliation claim against C.O. Thomas, the motion be **DENIED**,

(2) Insofar as it seeks dismissal of plaintiff's First and Fourth Amendment claims against C.O. Cornell, C.O. Lovejoy, C.O. Schramm, and Sgt. Ederer for the incidents occurring on July 9, 2015, the motion be **DENIED**, without prejudice, to defendants renewing this argument and requesting a hearing to assess whether plaintiff exhausted his administrative remedies, and it is further,

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

 **IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall

be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[11]

Dated: January 11, 2018
Albany, New York

Christian F. Hummel

Christian F. Hummel
U.S. Magistrate Judge

---

[11] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).